<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MARCELLA CRENSHAW, | |
| Plaintiff, | Civil Action No. 10-1493 (MAS) |
| v. | **OPINION** |
| COMPUTEX INFORMATION SERVICES, INC., et al., | |
| Defendants. | |

**SHIPP, Michael A., United States Magistrate Judge**

On March 23, 2010, Plaintiff Marcella Crenshaw ("Plaintiff") filed a Complaint on behalf of herself and all others similarly situated, seeking a broad range of damages and relief, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (*See generally* Docket Entry Number ("Doc. No.") 1 ("Compl.").)  Specifically, Plaintiff alleges Defendants Computex Information Services, Inc. ("Computex"), Levy, Ehrlich & Petrillo, PC ("LEP") (collectively, "Defendants") and Evergreen Apartment Management, LLC ("Evergreen") violated five provisions of the FDCPA, which comprise the following five Counts:

> Count I – Defendants violated Section 1692j(a) by collaborating "to design, furnish and deliver a collection form letter to Plaintiff which they knew or should have known would create the false belief that the alleged debt had already been turned over to [LEP];"
>
> Count II – Evergreen violated Section 1692j(b) by collaborating with Computex and LEP, who allegedly violated Section 1692j(a);[1]

---

[1] On July 21, 2010, this Court granted Evergreen's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. (Doc. Nos. 17-18.)  Accordingly, Count II, which only pertained to Evergreen, is no longer at issue and will not be addressed in this Opinion.

> Count III – Defendants violated Sections 1692g(a)(3),(4),(5) by sending a "joint collection letter," which would cause the least sophisticated consumer to be unsure of her rights;
>
> Count IV – Defendants violated Section 1692e(10) by using deceptive and false representations to collect or attempt to collect a debt; and
>
> Count V – Defendants violated Section 1692c(c) by sending Plaintiff an additional validation notice ("collection letter") after Plaintiff's counsel notified Defendants to "*Cease and Desist* direct communication with Plaintiff."

(Compl. ¶¶ 24-46 (emphasis in original).)

This matter now comes before the Court on cross-motions for summary judgment submitted by Plaintiff and Computex and LEP, pursuant to Federal Rule of Civil Procedure 56(a). (Doc. No. 26 ("Pl.'s Moving Br."); Doc. No. 27 ("Defs.' Moving Br."), respectively.) Pursuant to Federal Rule of Civil Procedure 78(b), the cross-motions for summary judgment shall be decided on the papers submitted.

Having carefully reviewed and considered the relevant papers, and for the following reasons, Plaintiff's motion for summary judgment is **DENIED** on all counts and Defendants' motion for summary judgment is **GRANTED** on all counts.

## I. BACKGROUND

Plaintiff was a tenant at a property owned by Evergreen, pursuant to a one year lease agreement. (Doc. No. 34 ("Pl.'s Reply Br.") 6.) After failing to timely pay her December rent, on December 15, 2009, Defendants sent Plaintiff one validation notice attempting to collect the outstanding rent and associated fees on behalf of its client Evergreen. (Compl. ¶¶ 16-21; Defs.' Moving Br. 5-6; Doc. No. 30 ("Defs.' Opp'n Br.") 2-3.) This letter attempted to collect $1,184.00 in back rent, plus any fees that accrued between the time the letter was sent and payment of the debt, for rent owed to Evergreen. (Defs.' Joint St. of Uncontested Mat. Facts ("DUMF") ¶¶ 5-6; Pl.'s Opp'n to DUMF ¶ 5.) The letter was written on the letterhead of both

2

Computex and LEP (Pl.'s St. of Uncontested Mat. Facts ("PUMF") ¶ 2) and states, in pertinent part:

> According to the records of EVERGREEN APT. MGMT., LLC [identified earlier in the letter as the creditor/landlord], the total amount you owe them is $1,184.00. Additional sums may become due at the time you choose to pay. You may contact the creditor/landlord or Computex to obtain the amount due at that time.
>
> Federal law requires our offices to inform you that unless you notify in writing either office within thirty (30) days after receiving this Notice that you dispute the validity of this debt or any portion thereof, our offices will assume this debt is valid. If you notify either office in writing within thirty (30) days from receiving this Notice that the debt or any portion thereof is disputed, the office contacted by you in writing will obtain a verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.
>
> The office contacted by you will provide the name and address of the original creditor, if different from the current creditor, if requested by you in writing within 30 days from receiving this Notice.
>
> This disclosure pertains to your dealings with our offices. It does not affect your dealings with the Court. In particular, it does not change the time or date at which you must appear in Court in response a [sic] Summons and Complaint. A Summons is a command from the Court, not our offices, and you must follow its instructions even if you dispute the validity or amount of the debt.
>
> This communication is from debt collectors. This is an attempt to collect a debt and any information obtained will be used for that purpose.

(Compl. Ex. A.) Defendants simultaneously filed a Summons and Complaint for the eviction of Plaintiff based on her delinquent rent obligation. (Defs.' Moving Br. 6.)

In a letter dated January 6, 2010, Plaintiff's counsel responded by notifying Defendants "that [Plaintiff] disputed the validity of the alleged debt and requested a full accounting" (PUMF ¶ 10; DUMF ¶ 8; Defs.' Opp'n Br. 4) and instructed Defendants to "*Cease and Desist* all collection efforts and communications with Ms. Crenshaw." (Compl. Ex. B, emphasis in original; Defs.' Moving Br. 7.) Defendants responded to Plaintiff's counsel on January 10, 2010 with a full accounting and explanation of the outstanding debt owed to Evergreen. (DUMF ¶ 9;

3

Defs.' Moving Br. 7.)  The accounting included an amount for the outstanding December rent and the associated late fee, a legal fee and the January rent and late fee, since the January rent payment was not received on the fifth day of the month, as otherwise required by the lease agreement.  (Compl. Ex. C; DUMF ¶¶ 5-6; Pl.'s Opp'n to DUMF 1, ¶ 5.)  On or about January 25, 2010, Plaintiff paid her outstanding December rent, the attendant late fees and interest, her January rent plus fees and interest.  (DUMF ¶¶ 10; Pl.'s Opp'n to DUMF ¶ 10; Decl. of Marc Sampson ("Sampson Decl.") ¶¶ 9.)

On February 11, 2010, Defendants sent a nearly-identical validation letter to Plaintiff, based on her unpaid, outstanding February rent.  (DUMF ¶¶ 13; Pl.'s Opp'n to DUMF ¶ 13.)  In response, on February 22, 2010, Plaintiff's counsel sent Defendants another letter advising that Plaintiff was represented by counsel with respect to this debt and instructing Defendants to cease and desist all direct communications.  (Compl. Ex. E; Defs.' Moving Br. 7-8; Defs.' Opp'n Br. 4.)

## II.   LEGAL DISCUSSION

As discussed above, both Plaintiff and Defendants move for summary judgment on all remaining Counts, which allege that Defendants violated 15 U.S.C. Sections 1692j(a), 1692g(a),(3),(4),(5), 1692e(10) and 1692c(c).  After reviewing Plaintiff's and Defendants' motion papers and supporting materials, it is clear that neither party disagrees on the content of the December 15, 2009, January 6, 2010 and February 11, 2010 letters, the number of validation letters sent, nor whether the February 11, 2010 letter was sent after Plaintiff's counsel requested Defendants to cease and desist all collection efforts and/or communications with Plaintiff.  Thus, the Court finds that there are no issues of genuine material fact in dispute that bear relevance to the remaining disputes and, as such, this matter is ripe for summary judgment consideration.  Having carefully reviewed and considered the parties' legal positions, as well as the applicable

standards of law, statutes and case law, the Court finds that Defendants are entitled to summary judgment as a matter of law.

    A.    **STANDARD OF REVIEW**

        **(i)**    ***Summary Judgment***

Summary judgment should be granted when "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue or dispute concerning a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it could "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Any outstanding disputes over irrelevant or immaterial facts will not preclude granting a motion for summary judgment. *Anderson*, 477 U.S. at 248.

The burden of proving that no genuine issue of material fact exists rests with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). While the non-moving party bears the burden of proof at trial, the movant may discharge its burden by demonstrating that the non-moving party has no evidence to support its claim. *Id*. at 325. Alternatively, the moving party may submit evidence negating material elements of the non-moving party's claim. *Id*. If the movant brings such evidence, or demonstrates that the non-moving party lacks the evidence necessary to prove its claim, then the burden of proof shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 324. Nevertheless, the non-moving party must establish each element necessary to succeed on the claims on which it bears the burden of proof at trial. *Id.* at 322. When assessing whether or not a material fact exists, the Court must consider all facts on record and draw all reasonable

inferences in light of the non-moving party. However, the Court must not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Rather, the Court must "determine whether there is a genuine issue for trial." *Id.* If there is no genuine issue of material fact, then the Court must grant summary judgment.

### (ii) *The Fair Debt Collections Practices Act*

Congress passed the FDCPA in order to combat creditors' and debt collectors' use of deceptive practices in the collection of debts. *See* 15 U.S.C. § 1692; *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000). When analyzing claims arising out of the FDCPA courts generally use a "least sophisticated debtor" standard. *Compuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (internal citations omitted). The "'least sophisticated debtor' standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (internal citations omitted). However, a debtor cannot shirk her responsibilities based on "bizarre or idiosyncratic interpretations of notices," as the standard "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Id.* at 354-55. Most importantly, interpreting communications and their potential to mislead consumers, as outlined in the FDCPA, is a matter of law for the Court to decide. *Id.* at 353 n.2.

### B.     COUNT I

In Count I of the Complaint, Plaintiff alleges that Defendants violated 15 U.S.C. Section 1692j(a) (Compl. ¶¶ 22-7), which states, in pertinent part:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false beliefs in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to

> collect a debt such consumer allegedly owes such a creditor, when in fact such a person is not so participating.

Under the FDCPA, a "debt collector" is defined as follows:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . .

15 U.S.C. § 1692a(6). Notably, in *Heintz v. Jenkins*, the United States Supreme Court held that for purposes of the FDCPA, an attorney or law firm is considered a debt collector when it regularly engages in litigation to collect consumer debts. 514 U.S. 291, 294-95 (1995).

Similarly, in discussing and applying the FDCPA, the New Jersey Supreme Court found that law firms regularly engaged in summary dispossession actions may only be considered a debt collector under the FDCPA, if the filing of the action for nonpayment of rent is a direct or indirect attempt to collect the debt. *Hodges v. Sasil Corp.*, 189 N.J. 210, 224-25 (2007).[2] The *Hodges* court explained:

> [I]n practice, the summary dispossession action is . . . a powerful debt collection mechanism. . . . [that] "is designed to secure performance of the rental obligation." . . . The tenant and landlord understand the summons and complaint [for an eviction proceeding] to be a demand for payment of rental arrears, a demand that prompts defaulting tenants to pay owed rent.

*Id.* at 226-28 (internal citation omitted). Correspondingly, the Third Circuit has held that third parties who engage in non-traditional debt collection activities are considered "debt collectors" for FDCPA purposes. *See Oppong v. First Union Mortg. Corp.*, 215 Fed. Appx. 114, 118-19 (3d Cir. 2007) (holding Wells Fargo, when enforcing a foreclosure proceeding, is considered a "debt collector" under the FDCPA); *Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 235 (3d Cir. 2005)

---

[2] The Court understands that New Jersey Supreme Court case law is not binding authority; nevertheless, the Court's application and interpretation of the FDCPA, as well as the *Heintz* case and other relevant case law, in this instance, is informative and persuasive.

(holding those enforcing a lien for an unpaid water bill are considered "debt collectors" under the FDCPA).

In this matter, Plaintiff maintains that LEP's inclusion in the December 15, 2009 letter is designed to create the false belief that LEP was participating in the debt collection, when in fact LEP merely initiated an eviction proceeding, which Plaintiff asserts is separate and apart from the debt collection. (Pl.'s Moving Br. 8-9; Doc. No. 31 ("Pl.s' Opp'n Br.") 4-5.) Defendants, on the other hand, respond that Plaintiff's belief was not false and, in fact, was accurate. (Defs.' Moving Br. 3-4, 11-12; Defs.' Opp'n Br. 6.) Defendants explain that LEP's filing of the eviction proceeding on behalf of Evergreen is a form of debt collection, which is why LEP was included in the letter. (Defs.' Moving Br. 3-4, 11-12.) Thus, Defendants argue, the collection letter does not violate Section 1692j(a) of the FDCPA. This Court agrees.

Here, the Court finds that pursuant to the relevant statutes and case law, because LEP regularly files summary dispossession or eviction actions on behalf of creditor Evergreen, LEP is considered a debt collector under the FDCPA. (*See* Decl. of Bruce Gudin ("Gudin Decl.") ¶ 3.) Since LEP is considered a debt collector under the FDCPA, the Court finds that its inclusion in the December 15, 2009 validation letter is not misleading. Further, the inclusion of LEP in the letter was not intended to create any false belief in Plaintiff that LEP was participating in the debt collection, as LEP was in fact participating by way of the eviction proceedings. Thus, the Court finds that there are no genuine issues of disputed material facts and Defendants are entitled to judgment as a matter of law on Count I of Plaintiff's Complaint. Based on the foregoing reasons, Plaintiff's motion for summary judgment regarding Count I of the Complaint is **DENIED** and Defendants' motion for summary judgment on Count I is **GRANTED**.

**C. COUNT III**

In Count III of the Complaint, Plaintiff alleges that Defendants violated Section 1692g(a) of the FDCPA, which states, in pertinent part, that when a debt collector is attempting to collect from a consumer the debt collector must:

> Within five days after the initial communication with a consumer in connection with the collection of any debt . . . send the consumer a written notice containing –
> . . .
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(3),(4),(5).

The notice requirements under Section 1692g(a) of the FDCPA are designed to ensure that validation notices make a consumer's rights clear. *Wilson*, 225 F.3d at 354 ("[T]he debt validation provisions of section 1692g were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law"). A communication does not provide adequate notice, and is deceptive, when it can reasonably be read to have two or more meanings, one of which is inaccurate, or otherwise presents contradictory demands. *See id.*; *Campuzano-Burgos.*, 550 F.3d at 298; *Rosenau v. Unifund Corp.*, 539 F.3d 218 (3d Cir. 2008); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 2000). Furthermore, while the Court, as explained above, must interpret the letter through the eyes of the "least sophisticated debtor," this

9

standard does not relieve the debtor of the responsibility to read the validation notice with care. *Wilson*, 225 F.3d at 354-55.

Plaintiff argues that the Defendants' validation notice did not provide adequate notice and violated Section 1692g(a) of the FDCPA because: (1) it did not clearly explain who Plaintiff should contact to retrieve the correct amount due and dispute the validity of the debt; (2) Defendants should have sent two validation notices, instead of one, since there are "two debt collectors;" and (3) the letter gave the impression that disputing the debt was not possible since the matter was already referred to the court and thus did not adequately notify Plaintiff of her rights. (Pl.'s Moving Br. 8-9; Pl.'s Opp'n Br. 4-5.) Specifically, Plaintiff contends that the collection letter is deceptive and confusing because it instructs her to call Evergreen or Computex to pay the debt or to receive the exact amount owed, while also asking her to contact, if she chooses to dispute the validity of the debt, Computex or LEP, the senders of the letter. (Pl.'s Moving Br. 8.) Therefore, Plaintiff asserts that two separate validation notices were required, because the FDCPA requires a debtor to notify each debt collector if a debt is being disputed and there is no provision that states that notification to one debt collector will bind the other debt collector seeking the same debt. (Pl.'s Opp'n Br. 2.) According to Plaintiff, the notice fails under the FDCPA requirements, because it left Plaintiff uncertain as to what her rights were and how she should dispute the alleged debt. (*Id.* at 3.)

Finally, Plaintiff argues that Defendants' validation notice improperly references Plaintiff's possible dealings with the court. Plaintiff contends that the references to the "court" could lead the least sophisticated debtor to fail to dispute her debt, believing that the matter has already been referred to the court. Also, Plaintiff contends that because no court proceeding had

10

been initiated at the time the notice was sent, the reference to the "court" is false and designed to intimidate Plaintiff. (Pl.'s Moving Br. 6.)

Defendants, on the other hand, vehemently disagree with Plaintiff's position, arguing that the letter is not deceptive or confusing, does not present any choices to the debtor Plaintiff that are inaccurate or otherwise conflicting and, as such, summary judgment should be granted in its favor. (Defs.' Moving Br. 9-10; Defs.' Opp'n Br. 8.) Defendants maintain that the collection letter explicitly advises Plaintiff that she can "call Evergreen or Computex to find out the exact amount of rent/late fees owed, can write to Computex or Levy [LEP] to dispute the validity of the debt, and must follow the instructions on any legal process separately received, but can still dispute the validity of the debt." (Defs.' Opp'n Br. 8.) Defendants contend that providing a debtor with an option to contact one of two debt collectors to dispute a single debt, while also ensuring that Plaintiff is aware that she must comply with any court orders, independent of her right to dispute the debt, is neither contradictory nor confusing. (Defs.' Moving Br. 9-11.) Since the letter indicates that Plaintiff could contact "either office" to dispute the debt and/or seek validation and further states that the office she contacted would obtain the verification, Defendants argue that the letter satisfies the FDCPA requirements, as "it would not leave the least sophisticated consumer 'uncertain as to her rights.'" (*Id.* at 11.) Defendants further note that, in dismissing Evergreen from this action, the Court previously found that the letter came from both Computex and LEP, as debt collectors, and was not confusing as to the relationship between the Defendants and Evergreen. (*Id.* at 10-11.)

Here, as a matter of law, the Court finds that while the letter provides multiple options for receiving the amount due or disputing the validity of the debt, the options are not inaccurate or do not otherwise require contradictory demands. The letter clearly identifies all parties

participating in the debt collection process and what roles each entity plays. (*See* Compl. Ex. A.) The letter is written on both Computex's and LEP's letterhead, it is signed by both entities, and the word "our" is mentioned frequently throughout; thus, the Court finds that both Defendants are identified as the senders of the letter. (*Id*.) Additionally, Evergreen, in a standalone sentence at the beginning of the letter, is specifically identified as the creditor/landlord. (*Id*.) The letter explicitly states that "[Plaintiff] may contact the creditor/landlord *or* Computex to obtain the amount due at that time." (*Id*. (emphasis added).) While the letter outlines a number of options for accomplishing various goals, none of the options are contradictory or inaccurate. Plaintiff may contact either Evergreen or Computex to pay the debt or either Computex or LEP to dispute the validity of the debt – each option is identified and available to the Plaintiff. Thus, the Court finds that by carefully reading the letter, as is required, the least sophisticated debtor would be adequately notified of her rights.

Similarly, the Court finds Plaintiff's argument that Defendants were required to send two validation notices, instead of a joint notice, unpersuasive. Plaintiff does not refer to any binding or persuasive authority to support her position. Indeed, it appears there is none. Again, the ultimate goal of a validation notice is to properly notify the consumer of her rights. Here, the Court finds that Defendants' validation notice satisfied the goals and requirements of the FDCPA. Indisputably, the letter sent to Plaintiff clearly identifies Computex and LEP as the debt collectors and senders of the letter, and properly notifies Plaintiff of her rights. Furthermore, had Computex and LEP sent their own validation notices, instead of a joint notice, it may have created unjustified confusion, as it could give Plaintiff the impression that she owes two debts instead of one. Thus, the Court does not find that Defendants' joint validation notice violated Section 1692g of the FDCPA.

Equally unconvincing is Plaintiff's asserted confusion regarding Defendants' reference to court proceedings and her contention that no court proceeding had been initiated on or about the time Plaintiff received the collection letter. First, it is clear by the facts of this case that the Summons and Complaint for Plaintiff's eviction was prepared and filed on December 15, 2009. (*See* DUMF ¶ 7.) Indeed, Plaintiff does not dispute this fact and has not provided any evidence that would lead this Court to believe otherwise. (*See* Pl.'s Opp'n to DUMF ¶ 7 (leaving this issue to Defendants to prove, as opposed to denying Defendants' undisputed material fact).) In fact, Defendants provided a copy of the Summons and Complaint filed on December 15, 2009, which demonstrates that a court proceeding had indeed been initiated by the time Plaintiff received Defendants' collection letter. (Gudin Decl. Ex. A.)

Second, references to court proceedings would not cause confusion to the least sophisticated debtor, as the letter clearly stated: "This disclosure pertains to your dealings with our offices. It does not affect your dealings with the Court. . . . you must follow [the Court's] instructions *even* if you dispute the validity or amount of the debt." (Compl. Ex. A (emphasis added).) Thus, the plain language of the collection letter references two distinct issues: (1) Plaintiff's dealings with a court and (2) Plaintiff's rights to pay or dispute the debt directly, as discussed in the letter. As an eviction proceeding had already begun, references to the court serve to inform Plaintiff that her rights to dispute the validity of the debt remain, notwithstanding the court proceedings and/or instructions or requirements made by a court. Indeed, had the letter not instructed Plaintiff that she was required to follow any instructions provided by a court, even if she was simultaneously disputing the debt directly with Defendants, the letter would have been considered by this Court to be misleading, deceptive and/or confusing, because Plaintiff may have believed that she was not required to defend herself in the eviction proceeding.

Accordingly, the Court finds that references to a court in the validation notice properly notified Plaintiff of her consumer rights and did not violate the FDCPA notice requirements.

Again, as a debtor, Plaintiff has a duty to read the collection letter and validation notice carefully, with a basic level of understanding. Carefully reading Defendants' collection letter makes its contents and instructions clear, as it sufficiently sets forth the necessary FDCPA notice requirements and advises Plaintiff of her rights. Based on the foregoing reasons, and for other good cause shown, the Court finds that Defendants are entitled to judgment as a matter of law on Plaintiff's Count III of the Complaint, as there are no genuine issues of material fact in dispute. Accordingly, Plaintiff's motion for summary judgment regarding Count III of the Complaint is **DENIED** and Defendants' motion for summary judgment on Count III is **GRANTED**.

### D.     COUNT IV

Count IV of the Complaint alleges that Defendants' collection letter runs afoul of Section 1692e(10) of the FDCPA, which makes it a violation for a debt collector to "use . . . any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." As explained above, a collection letter is deceptive when it can reasonably be read to have two or more meanings, one of which is inaccurate or contradictory to another requirement. *Wilson*, 225 F.3d at 354. However, the consumer has a duty to read the collection letter carefully and is presumed to have "a basic level of understanding and a willingness to read with care." *Campuzano-Burgos*, 550 F.3d at 299; *Wilson*, 225 F.3d at 354-55.

In support of her assertion that Defendants violated Section 1692e(10), Plaintiff makes many of the same arguments set forth above under this Court's discussion of Count III of the Complaint. Specifically, Plaintiff claims that the collection letter or validation notice is deceptive,

as it would lead the least sophisticated consumers "to be uncertain as to whether they should dispute the alleged debt with Computex or [LEP], or with both Computex and [LEP]," or with neither Defendant. (Compl. ¶ 40; Pl.'s Moving Br. 7; Pl.'s Opp'n Br. 4.) Additionally, Plaintiff contends that the use of law firm letterhead deceptively implies that the threat of litigation looms if Plaintiff fails to pay the debt or adequately dispute it. (Pl.'s Moving Br. 8-9; Pl.'s Opp'n Br. 4-5.) Plaintiff cites to *Lesher v. Law Office of Mitchell N. Kay, P.C.*, as support for this proposition, in which the court found that each collection letter sent to a debtor gave rise to the implication that an attorney was involved in the debt collection and implicitly threatened legal action, when in fact court claims were not anticipated. 724 F. Supp. 2d 503, 509 (M.D. Pa. 2010).

      Defendants again vehemently disagree with Plaintiff's position, making the same arguments used to support their summary judgment motion on Count III. Defendants maintain that the letter is not deceptive or confusing, as it explicitly advises Plaintiff that she can contact *either* Computex or Levy to dispute the debt and that whichever of the two offices she contacts will be the same office to respond to her written request. (Defs.' Opp'n Br. 8.) Thus, based on the explicit language of the letter, Defendants assert that Plaintiff's uncertainty as to whether she had to contact both Defendants or neither to dispute the debt necessarily fails. (*See id.*) With regard to Plaintiff's assertion that use of the LEP letterhead implied a threat of litigation, Defendants again contend that the argument is misplaced, as the eviction proceeding had in fact commenced. (*Id.*)

      The Court finds that the letter adequately explains who the debt collectors are and who Plaintiff can contact to dispute the validity of the debt. Furthermore, the Court agrees with Defendants that Plaintiff's asserted confusion as the result of Defendants' use of the LEP letterhead is misplaced. Certainly, the use of LEP's letterhead was not intended as a "threat" or

15

intimidation tool, as a Summons and Complaint for eviction was simultaneously filed when the notice was sent, which is well within Evergreen's landlord rights.  Further, the letter is sent on the letterhead of both Computex and LEP and is signed by both Defendants, as the letter was sent by both organizations.  Additionally, the first paragraph reads, "[t]his letter has been sent to you by the office of Computex Information Services, Inc. . . . *and* the law offices of Levy, Ehrlich & Petriello, A Professional Corporation."  (Compl. Ex. A (emphasis added).)  The use of the word "and" in the first paragraph specifically indicates that the collection letter was sent by both Defendants.  Additionally, the first sentence in paragraph four reads: "Federal law requires our offices to inform you that unless you notify in writing *either* office . . . ."  (*Id*. (emphasis added).)  Here, the use of the word "either" in describing who Plaintiff can contact to dispute the validity of the debt indicates that any office can be contacted in order to dispute the debt.  It, therefore, logically follows that Plaintiff was not required to contact both offices.  Finally, the first sentence of the fifth paragraph ("[t]he office contacted by you will provide . . . ." (*Id*.)), places Plaintiff on notice that the office she contacts will provide the information requested.  While the letter provides Plaintiff with the option to either contact Computex or LEP to dispute the debt, the option is accurate, the letter clearly states that both options are available and a careful reader, no matter her sophistication, would understand this.

     Likewise, the Court finds that Plaintiff's argument that the letter is deceptive because it is written on law firm letterhead and meant to convey the threat of litigation, is equally unpersuasive.  In the matter at bar, LEP, on behalf of Evergreen, had already initiated an eviction proceeding and, as such, use of its letterhead was appropriate.  Since the eviction litigation had begun, there was never any false implication or threat of litigation conveyed, only facts.

Accordingly, the Court finds that Defendants' validation notice adequately explains who Computex and LEP are, what roles they play in the debt collection and does not improperly convey a threat of litigation. As there are no genuine issues of material fact in dispute, the Court finds that Defendants are entitled to judgment as a matter of law on Count IV of Plaintiff's Complaint. As such, based on the foregoing reasons, Plaintiff's motion for summary judgment regarding Count IV of the Complaint is **DENIED** and Defendants' motion for summary judgment on Count IV is **GRANTED**.

### E.  COUNT V

Count V of the Complaint alleges that Defendants violated Section 1692c(c) of the FDCPA, which provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer *with respect to such debt.*

15 U.S.C. § 1692c(c) (emphasis added). Notably, debt is defined as:

> [A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

*Id.* at § 1692a(3).

In the instant matter, Plaintiff argues, and Defendants do not contest, that after Defendants sent her the December 15, 2009 collection letter, Plaintiff's counsel notified Defendants, on January 6, 2010, that Plaintiff had retained counsel and that Defendants should "*Cease and Desist* all collection efforts and communications with Ms. Crenshaw." (Compl. Ex. B, emphasis in original.) After Plaintiff paid the outstanding debt owed for her December and January rents, on February 11, 2010, Defendants sent a second collection letter to Plaintiff,

regarding her failure to pay rent for the month of February. (Pl.'s Moving Br. 9; DUMF ¶¶ 11-4; PUMF ¶¶ 13-4; Sampson Decl. ¶¶ 10-4.)

Notably, the parties agree that Plaintiff failed to pay rent in December, that she settled her December rent obligation, interest and fees in late January, and then failed to pay rent again in February. (DUMF ¶¶ 11-4; Pl.'s Opp'n to DUMF ¶¶ 11-4; Sampson Decl. ¶¶ 9-14.) Based on the December cease and desist letter sent to Defendants, Plaintiff takes the position that it was improper to send the second collection letter, as both debts or defaults are a consequence of the same, one year lease or contract (Pl.'s Moving Br. 9; Pl.'s Reply Br. 6; Pl.'s Opp'n Br. 6-7.) Defendants, however, assert that the second letter was not inappropriate, as it relates to an entirely different file and debt than the one addressed in counsel's initial cease and desist letter. (Defs.' Moving Br. 4-5, 12-14; Defs.' Opp'n Br. 9.)

Thus, the only outstanding disagreement between the parties is whether the unpaid February rent constitutes a separate debt obligation from the unpaid December rent or if both obligations constitute a single debt arising from the lease, which would make the initial December cease and desist letter applicable to the second collection letter. Having carefully reviewed and considered the parties' legal arguments, as well as the applicable laws and case law, the Court finds that Defendants did not violate Section 1692c(c) of the FDCPA. It is clear and undisputed by the facts that Plaintiff failed to pay her rent in December, triggering the December 15, 2009 letter and Plaintiff's January 6, 2010 response. (DUMF ¶¶ 5-8; Pl.'s Opp'n to DUMF ¶¶ 5-8; Sampson Decl. ¶¶ 5-9.) In January, Plaintiff satisfied her December and January rent obligations and the eviction proceeding Defendants initiated against her was dismissed. (DUMF ¶ 10; Pl.'s Opp'n to DUMF ¶ 10; Sampson Decl. ¶ 9.) It follows logically that by settling the unpaid December and January rent obligations, it brings Plaintiff's total rental

18

obligation to zero, therefore eliminating any outstanding debt. Thus, when Plaintiff failed to pay rent in February it created a new outstanding rental obligation. While both debts arise from the same lease transaction, Plaintiff's second and separate failure to pay rent created an entirely new debt. Therefore, the Court finds that the single transaction, Plaintiff's lease, created two separate debts based on two separate violations, one for December/January rent and one for February rent.

Certainly, "with respect to such debt" is the essential phrase in Section 1692c(c) of the FDCPA, as it signifies that debt collectors are only required to cease communication with consumers, after being asked by the consumer or her counsel with respect to the debt that the initial notification referenced. The Third Circuit Court of Appeals agrees. In analyzing a similar subsection of Section 1692c that contains the same "with respect to such debt" phrase,[3] the Third Circuit held that if a consumer incurs a new, separate debt, then the debt collector is free to contact the consumer directly, despite having been previously notified that the consumer was represented by counsel regarding a previous debt. *Graziano*, 950 F.2d at 113. Since Plaintiff incurred two separate debt obligations, one for December/January rent and one for February rent, Defendants were free to contact Plaintiff regarding the unpaid February rent despite her counsel's January 6 letter. *See id.* Accordingly, the Court finds that Defendants are entitled to

---

[3] Specifically, 15 U.S.C. § 1692c(a)(2), which pertains to communications with the consumer, provides:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt – if the debt collector knows the consumer is represented by an attorney *with respect to such debt* and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

judgment as a matter of law with regard to Count V of Plaintiff's Complaint, as there are no genuine issues of material fact in dispute.

Thus, for the foregoing reasons, Plaintiff's motion for summary judgment regarding Count V of the Complaint is **DENIED** and Defendants' motion for summary judgment on Count V is **GRANTED**.

### III.     CONCLUSION

For the foregoing reasons, and for other good cause shown, Plaintiff's motion for summary judgment is **DENIED** in its entirety and Defendants' motion for summary judgment is **GRANTED** in its entirety.  Pursuant to Federal Rule of Civil Procedure 56, Defendants have demonstrated that there are no genuine issues of material fact in dispute and that Defendants are entitled to judgment as a matter of law on Counts I, III, IV and V of Plaintiff's Complaint.  An appropriate form of order will be filed together with this Opinion.

 s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**

Dated: April 29, 2011